## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Miriam Birdsong and Cheryl Mikel , individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | Case No.: 1:24-cv-07994 |
| **v.** | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| **WALGREENS INC.,** | |
| *Defendant.* | **JURY TRIAL DEMANDED** |

Plaintiffs Miriam Birdsong and Cheryl Mikel ("Plaintiffs") bring this Class Action Complaint against Defendant, Walgreens Inc., ("Defendant") individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action lawsuit on behalf of themselves, and all others similarly situated who purchased generic store brand Mucinex from Walgreens, which contains the cancer-causing chemical benzene.

1

2.      Benzene is a colorless, flammable liquid that has been used to make plastics, synthetic fibers, household cleaners, gasoline and rubber, and has been linked to diseases such as leukemia and lymphoma.[1]

3.      The brand-name version of Mucinex, which is sold by British pharmaceutical giant Reckitt Benckiser Group, uses a white powder called carbomer, which creates the extended-release effect that helps ease symptoms over a 12-hour period, as an inactive ingredient that does not contain benzene.[2] Unfortunately, the generic versions of Mucinex sold by Defendant Walgreens uses benzene containing components for its extended-release effect.

4.      Benzene can be found in several popular medicines and household products beyond Mucinex, including Walgreens' version of the oral pain reliever Anbesol, Walmart's Equate brand face moisturizer with sunscreen, and Rite Aid's generic Bengay muscle rub.[3]

5.      Upon information and belief, Walgreens has been selling this product for quite some time.

6.      Unfortunately, the Products are unfit for their intended consumption because they are contaminated with the harmful cancer-causing chemical, Benzene.

7.      Upon information and belief, Defendant has removed products from their shelves but have not recalled those sold to customers.

8.      The Center for Disease Control has stated that long-term exposure to benzene affects the blood.[4] Benzene causes harmful effects on the bone marrow and can cause a decrease

---

[1] https://nypost.com/2024/08/12/business/generic-version-of-mucinex-sold-by-cvs-walmart-walgreens-and-target-contain-cancer-causing-chemical-report/ (last assessed August 23, 2024).
[2] Id.
[3] https://www.the-sun.com/health/12182428/deadly-cancer-causing-chemical-is-found-in-products/ (last assessed August 23, 2024).
[4] https://emergency.cdc.gov/agent/benzene/basics/facts.asp#:~:text=Benzene%20is%20a%20chemical%20that,float%20on%20top%20of%20water. (last assessed August 23, 2024).

in red blood cells, leading to anemia.[5] It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.[6]

9.      Moreover, the Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans.[7] Long-term exposure to high levels of benzene can cause leukemia, cancer of the blood-forming organs.[8]

10.     The Products are advertised, sold, and distributed by Defendant or its agents, to consumers, including Plaintiffs, across the United States and abroad.

11.     Each of the products was sold by Defendant to consumers across the United States.

12.     Through marketing and sale, Defendant represented that the Products are safe for people, including pregnant women and their newborns, adults aged 65 or older, and people with weakened immune systems.

13.     Plaintiffs and consumers do not know, and did not have a reason to know, that the Products purchased were contaminated with Benzene. Consumers expect the products they purchase to be safe for use and not contaminated by Benzene, which can cause cancer.

14.     At the time of their purchases, Defendant didn't notify Plaintiffs, and similarly situated consumers, of the Product's risk of Benzene through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal laws.

15.     Plaintiffs purchased the Products, while lacking the knowledge that Products could harm those who consumed the products, thus causing serious injuries to those who use such Products.

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

16.     Because Plaintiffs were injured by the Products and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

17.     As a result of the above losses, Plaintiffs seek damages and equitable remedies.

## PARTIES

18.     Plaintiff Miriam Birdsong is a resident and citizen of Summerville, South Carolina.

19.     Plaintiff Cheryl Mikel is a resident and citizen of Hanahan, South Carolina.

20.     Defendant Walgreens Inc. is a corporation headquartered at 200 Wilmot Rd, Deerfield, IL 60015, incorporated in Delaware, and does business throughout the United States.

## JURISDICTION AND VENUE

21.     This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

22.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Defendant because Defendant's corporate headquarters are located in the Northern District of Illinois.   Defendant has purposefully availed itself to the laws, rights, and benefits of the State of Illinois.  Defendant has its principal place of business in Illinois and has engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents provided services throughout this forum; (ii) conducted substantial business in this form; and/or (iii) engaged in other persistent courses of conduct and/or derived substantial revenue from services provided in Illinois and in this judicial district.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1) because Defendant resides in this judicial district.  A substantial part of the events or omissions giving rise to the Classes' claims also occurred in this district.

## FACTUAL ALLEGATIONS

1.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

2.     On August 12, 2024, news outlets released articles highlighting the Generic version of Mucinex sold by CVS, Walgreens, Walmart, and Target contained cancer-causing chemicals. [9]

3.     Upon the release of this information, CVS released a statement through a spokesperson, telling The Post: "Our store brand products are developed to be safe and high-quality, work as intended, comply with regulations, and satisfy customers." [10]

4.     "When setting up any drug or cosmetic product, CVS store brand suppliers 'comply with all laws and regulations and are committed to following the FDA's guidance. We are working with the supplier to replace carbomer found in its mucus relief medicine.'" [11]

5.     Upon information and belief, Walgreens has yet to submit their response to the matter, nor have they attempted to remove products from their stores.

6.     Upon information and belief, Walgreens has not attempted to remediate the situation by offering refunds to customers who purchased the product.

---

[9] https://nypost.com/2024/08/12/business/generic-version-of-mucinex-sold-by-cvs-walmart-walgreens-and-target-contain-cancer-causing-chemical-report/ (last assessed August 23, 2024).
[10] *Id.*
[11] *Id.*

7.     The benzene-containing product was distributed by Defendant to retail locations nationwide.

8.     Defendant is a well-established corporation known for the marketing of medical products sold in retail in the United States.

### The Products

9.     In the case of generic Mucinex, the major US chains all source their extended-release mucus-relief medicine from the same New Jersey company, Amneal Pharmaceuticals.[12]

10.     Unfortunately, the Products contain Benzene which is a colorless, flammable liquid that has been used to make plastics, synthetic fibers, household cleaners, gasoline and rubber, and has been linked to diseases such as leukemia and lymphoma.[13]

11.     The carbomer used to make the generic versions of the large retail pharmacies in the U.S. does indeed contain benzene.[14]



---

[12] https://fortune.com/2024/08/12/cvs-walmart-walgreens-brand-mucinex-may-contain-potent-carcinogen-benzene/# (last assessed August 23, 2024).
[13] https://nypost.com/2024/08/12/business/generic-version-of-mucinex-sold-by-cvs-walmart-walgreens-and-target-contain-cancer-causing-chemical-report/ (last assessed August 26, 2024).
[14] *Id.*



**PLAINTIFFS' FACTUAL ALLEGATIONS**

12.     Plaintiff Miriam Birdsong bought the generic Mucinex brand from Walgreens near their residence in Summerville, South Carolina.

13.     Plaintiff Cheryl Mikel bought the generic Mucinex brand from Walgreens near her residence in Hanahan, South Carolina.

14.     Nowhere on the Products' packaging or webpage did Defendant disclose that the Products contained Benzene.

15.     If Plaintiffs had been aware of the Benzene contamination in the Products, they would not have purchased the Products or would have paid significantly less.

16.     As a result of Defendant's actions, Plaintiffs have incurred damages.

17.     If the Products and packaging were reformulated to be safe and avoid risk of contamination due to Benzene, Plaintiffs would consider purchasing the Products again in the future.

## CLASS ACTION ALLEGATIONS

18.    Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and or 23(c)(4), individually, and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the generic brand Mucinex at Walgreen's stores.

**Illinois Subclass:** All persons within Illinois who purchased the generic brand Mucinex at Walgreen's stores.

**South Carolina Subclass**: All persons within South Carolina who purchased the generic brand Mucinex at Walgreen's stores.

19.    The Nationwide Class, Illinois Subclass, South Carolina Subclass, shall collectively be referred to herein as the "Classes."

20.    Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

21.    Excluded from the Classes are governmental entities, Defendant, its officers, directors, affiliates, legal representatives, and employees.

22.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

23.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

24.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a.   Whether Defendant negligently failed to exercise reasonable care in the promotion, marketing, advertising, packaging, labeling, distribution, and/or sale the Products;

b.   Whether Defendant sold the contaminated Products, that were unreasonably dangerous to consumers such as Plaintiff and members of the Classes;

c.   Whether Defendant failed to adequately warn Plaintiff and the Classes of the dangers with respect to the contaminated Products;

d.   Whether Defendant was negligent for failure to warn;

e.   Whether Plaintiffs and the Classes suffered Damages as a result of the contaminated Products;

f.   Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendant's Products;

g.   Whether Defendant omitted material information regarding the safety of the Products;

h.   Whether Defendant's Products were merchantable;

i.   Whether Defendant violated the consumer protection statutes invoked herein;

j.   Whether Defendant's conduct alleged herein was fraudulent; and

k.   Whether Defendant was unjustly enriched by sales of the Products.

25.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiffs' claims.

26.     **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Classes in that the Class members uniformly purchased Defendant's Products and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

27.     **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

28.     **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are members of the Classes, and their interests do not conflict with the interests of the Classes that they seek to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and undersigned counsel.

29.     **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible

10

standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

30. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seek to certify Classes to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended

31. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Unjust Enrichment**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

32.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

33.     Plaintiffs, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were not gifts or donations but were given in exchange for the Products.

34.     Defendant voluntarily accepted and retained these benefits.

35.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

36.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Classes, because Plaintiffs, and members of the Classes, purchased mislabeled products that were not what Plaintiffs and the Classes bargained for and were not safe, as claimed.

37.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's selling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Classes, because they would have not purchased the Products had they known the true facts.

38.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

**COUNT II**
**Breach of Express Warranty**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

39.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

40.     Plaintiffs and members of the Classes formed a contract with Defendant at the time they purchased the Products.

41.     The terms of the contract include the promises and affirmations of fact, that the products were safe to consume, made by Defendant on the Products' packaging and through marketing and advertising.

42.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant.

43.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe to consume by people of all ages and genders.

44.     Plaintiffs and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

45.     Defendant breached express warranties relating to the Products and their qualities because Defendant's Products possessed the capability to contaminate the consumers with

Benzene at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

46.     Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Products contaminating those who consumed the Products.

47.     As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III
### Breach of Implied Warranty
### (On behalf of the Nationwide Class and, alternatively, the Subclass)

48.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

49.     Defendant is engaged in the business of selling, distributing, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

50.     The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

51.     Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiffs and Class Members.

52.     However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

14

53. Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

54. Had Plaintiffs, Class Members, and the consuming public known that the Products could contaminate them and cause harm, they would not have purchased the Products or would have paid less for them.

55. As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

56. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

57. Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Classes.

58. There was a sale of goods from Defendant to Plaintiffs and the Classes.

59. As the marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiffs and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiffs and the Classes to consume. Contrary to these representations and warranties, the Products were not fit for their ordinary consumption, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

60. The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which medications are consumed and sold and were not otherwise injurious to consumers. The implied

15

warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiffs and the Class Members.

61.     Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably safe medication for consumption because the Products have a risk of contaminating the consumer with Benzene. Therefore, the Products are not fit for their particular purpose.

62.     Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiffs and the Classes a product that Defendant knew would expose Plaintiffs and the Classes to health risks, thereby Defendant knew that the Products were not fit for their intended consumption as safe to consume medication.

63.     Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of Benzene exposure that could result from the consumption of their Products.

64.     Plaintiffs and the Classes did not receive the goods they bargained for because the goods were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

65.     Plaintiffs and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

66.     The Products were not altered by Plaintiffs or the members of the Classes.

67.     Plaintiffs and members of the Classes consumed the Products in the ordinary manner in which such medications are intended to be consumed.

68.     The Products were defective when they left the exclusive control of Defendant.

69.     The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to consume the generic brand of Mucinex, and Plaintiffs and members of the Classes did not receive the goods that they bargained for.

70.     Plaintiffs and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

71.     As a result of the defect in the Products, Plaintiffs and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

72.     Defendant breached the implied warranty of merchantability to the Plaintiffs and Class members.

73.     Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

74.     Plaintiffs and Class members have been damaged by Defendant's breach of the implied warranties.

75.     Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relied, as well as costs and attorneys' fees, available under law.

### COUNT V
**Fraudulent Concealment**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

76.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     Defendant aimed to portray the Product as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from contamination due to Benzene.

78.     Defendant, as the marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the Products. Defendant owed Plaintiffs and Class Members a duty to disclose because the risks associated with Benzene contaminated products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained an ingredient known to have adverse health effects.

79.     Defendant willfully and knowingly omitted material information regarding the quality and safety of the Products as discussed herein. Defendant covered these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued consumption of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

80.     During this time, Plaintiffs, and members of the Classes, were using the Products without knowing the Products could contaminate them due to the Benzene product found in them.

81.     Defendant failed to discharge its duty to disclose these materials facts.

82. Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

83. Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiffs and Class Members, away from purchasing a competitor's product.

84. Plaintiffs and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of contamination due to Benzene.

85. As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs, and the Classes, suffered damages in the amount of monies paid for the defective Products.

86. Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiffs and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT VI

### Strict Liability- Failure to Warn
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

87. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

88. Defendant had a duty to warn Plaintiffs and the Class members regarding the Defect, that being the risk of exposure of Benzene, with the Products.

89. Defendant, which is engaged in the business of selling and supplying the Products placed them into the stream of commerce in a defective and unreasonably dangerous condition

such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Products.

90.     The Products supplied to Plaintiffs and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached the consumer of the Products, including Plaintiffs and Class Members, without substantial alteration in the condition in which they were sold.

91.     Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

92.     Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

93.     Defendant had information regarding the true risks but failed to warn Plaintiffs and members of the Classes to strengthen their warnings.

94.     Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

95.     Plaintiffs and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

96.     This Defect proximately caused Plaintiffs and Class members' damages.

97.     The Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
### Strict Liability- Design and Formulation Defect
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

98.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

99.     The design and formulation of the Products was defective and unreasonably dangerous.

100.    The risk of cancer exposure contained within the Products creates unreasonable danger.

101.    The design and formulation of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

102.    The risk of cancer exposure contained within the Products outweighed the benefits and rendered the Products unreasonably dangerous.

103.    Defendant's Product was defective because the design and formulation of the Products included Benzene.  After Defendant knew or should have known of the risk of injury from Benzene found in the Products, Defendant continued to promote the Products as safe and effective to the Plaintiffs, Class Members, and public.

104.    There are other similar medications that do not pose the risk of cancer due to Benzene, meaning that there were other means of production available to Defendant.

105.    The Products were unreasonably unsafe, and the Products should not have been sold in the market.

106.    The Products did not perform as an ordinary consumer would expect.

107.    The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

108.     Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT VIII
### Negligent Failure to Warn
### (On behalf of the Nationwide Class and, alternatively, the Subclass)

109.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

110.     Defendant owed Plaintiffs and Class members a duty of care and to warn of any risks associated with the Products.

111.     Defendant knew or should have known of the defect but failed to warn Plaintiffs and members of the Classes.

112.     Plaintiffs had no way of knowing of the Products' latent defect.

113.     Defendant's failure to warn caused Plaintiffs and Class members economic damages and injuries in the form of lost value due to risk of contamination due to Benzene exposure.

114.     Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT IX
### Negligent Design & Formulation Defect
### (On behalf of the Nationwide Class and, alternatively, the Subclass)

115.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

116.    Defendant owed Plaintiffs and the Classes a duty to design and formulate the Products in a reasonable manner.

117.    The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Products are now worthless.

118.    The design and formulation of the Products made them unsuitable or unsafe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

119.    There are other Mucinex products that do not expose the consumers with Benzene.

120.    The risk/benefit profile of the Products was unreasonable, and the Products should have contained stronger and clearer warnings or withheld from sale in the market.

121.    The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

122.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

### COUNT X
### Negligence
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

123.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

124.    Defendant owed a duty to consumers to produce a product that was safe for its intended consumption.

125.    Defendant breached this duty by producing a product that was dangerous for its intended consumption. Defendant knew or should have known that Benzene was present in the Mucinex product, thereby exposing consumers to life threatening injuries and subsequently worthless to consume.

126.    As a direct result of this breach, Plaintiffs suffered injuries in that Plaintiffs have been deprived of their benefit of the bargain. Plaintiffs' injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiffs would not have been injured.

127.    Further, Plaintiffs' injuries were proximately caused by Defendant's breach. It is foreseeable that poorly designed and formulated Mucinex products containing Benzene would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased the product.

128.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

### COUNT XI
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act .**
**(On behalf of the Nationwide Class, and alternatively, the Subclasses)**

129.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

130.    The Illinois Consumer Fraud and Deceptive Business Practices Act 815 Ill. Comp. Stat. §§ 505/1 et. Seq. ("The Act") was enacted to protect consumers and legitimate business enterprises from businesses that engage in unfair methods of competition and/or unfair acts during the conduct of commerce or trade. The Act prohibits the use of unfair or deceptive

acts or practices, including the use of deception, fraud, misrepresentation, and suppression of material facts.

131.    Plaintiffs are a "consumer" as defined by the Act.

132.    Defendant's advertising, soliciting and offering of, and the Plaintiffs'and the Customer's transactions of purchasing from or at Walgreens, the Products, is "trade or commerce" as defined by the Act.

133.    For the reasons discussed herein, Defendant violated the Act by falsely marketing products harming consumers , as described herein.

134.    Defendant's unconscionable, deceptive, and unfair acts and practices of falsely marketing products harming consumers, as described herein, were likely to, and did in fact, deceive members of the public, including Customers (like Plaintiffs and Class members) who were acting reasonably under the circumstances and to their detriment.

135.    In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices acts by charging Customers prices for Products that caused significant damage to their health (as applicable).

136.    As a result of Defendant's conduct alleged herein, Plaintiffs purchased the Products to no fault of their own, resulting in actual damages by such exposure to Benzene—a cancer holding chemical.

137.    Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendant advertised, marketed, and sold the Products at completely disregarding the harm Plaintiffs and the Class Members would face.

138.    Defendant induced Customers to select and purchase Products based on the belief that such products were safe for consumption.

139.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been harmed and suffered actual damages in that they paid Defendant for a product they could not receive the bargain for.

140.     Plaintiffs and Class members have been and will continue to be deceived or misled by Defendant's false, misleading, unfair and deceptive pricing practices which, on information and belief, are ongoing.

141.     Plaintiffs and Class members are entitled to recover actual damages to the extent permitted by law, reasonable attorneys' fees and costs; injunctive relief; and other relief as deemed appropriate or permitted pursuant to the relevant law.

142.     Plaintiffs reserve the right to allege other violations of Illinois Statutes as the case unfolds and as Defendant's conduct is ongoing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes, alleged herein, respectfully request that the Court enter judgment in his favor and against Defendant as follows:

a.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiff's attorney as Class Counsel;

b.  For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c.  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

i.  Such other relief as this Court deems just and proper.


Dated: September 4, 2024

Respectfully submitted,

/s/ *Roy T. Willey, IV*
Roy T. Willey, IV
Paul Doolittle, Esq.
(Pro Hac Vise Forthcoming)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: roy@poulinwilley.com
           Paul.doolittle@poulinwilley.com
           cmad@poulinwilley.com
*Attorneys  for Plaintiffs*