UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Miriam Birdsong and Cheryl Mikel, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff*,<br><br>v.<br><br>**WALGREENS INC.,**<br><br>*Defendant*. | Case No.: 1:24-cv-07994 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

1

**I.     INTRODUCTION**

Plaintiffs brought a class action lawsuit on behalf of themselves, and all others similarly situated who purchased generic store brand Mucinex from Walgreens ("Product"), from around May 2024 to around August 2024, which contains the cancer-causing chemical benzene. See generally *Am. Compl.* Benzene is a colorless, flammable liquid that has been used to make plastics, synthetic fibers, household cleaners, gasoline and rubber, and has been linked to diseases such as leukemia and lymphoma. *Id.* Each of the Products were sold by Defendant to consumers across the United States. *Id.* Through marketing and sale, Defendant represented that the Products are safe for people to consume, including pregnant women and their newborns, adults aged 65 or older, and people with weakened immune systems. *Id.*

Plaintiffs and consumers did not know, and did not have a reason to know, that the Products purchased were contaminated with Benzene. Consumers expect the products they purchase to be safe for use and not contaminated by Benzene, which can cause cancer. At the time of their purchases, Defendant didn't notify Plaintiffs, and similarly situated consumers, of the Product's risk of Benzene through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal laws. Plaintiffs purchased the Products, while lacking the knowledge that the Products could harm those who consumed the products, thus causing serious injuries to those who use such Products. As a result of the above losses, Plaintiffs seek damages and equitable remedies.

**II.    BACKGROUND**

On August 12, 2024, news outlets released articles highlighting that the Generic version of Mucinex sold by CVS, Walgreens, Walmart, and Target contained cancer-causing chemicals. See generally *Am. Compl.* Walgreens has yet to submit their response to the matter, nor have they

attempted to remove products from their stores. In addition, Walgreens has not attempted to remediate the situation by offering refunds to customers who purchased the Products. The Center for Disease Control has stated that long-term exposure to Benzene affects the blood. Benzene causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection. Lastly, it has been linked to causing cancer.

In the case of generic Mucinex, the major US chains all source their extended-release mucus-relief medicine from the same New Jersey company, Amneal Pharmaceuticals. See *Am. Compl.* ¶10. The carbomer used to make the generic versions of the large retail pharmacies in the U.S. contains benzene. *Id.* at ¶12. Plaintiff Miriam Birdsong bought the generic Mucinex brand from Walgreens near her residence in Summerville, South Carolina. Plaintiff Cheryl Mikel bought the generic Mucinex brand from Walgreens near her residence in Hanahan, South Carolina. If Plaintiffs had been aware of the Benzene contamination in the Products, they would not have purchased the Products or would have paid significantly less. As a result of Defendant's actions, Plaintiffs have incurred damages.

### III. ARGUMENT

**1. Plaintiffs Have Standing**

To survive a motion seeking dismissal under Rule 12(b)(1), a plaintiff must "clearly allege facts demonstrating each element" required to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *Sunnybrook LP v. City of Alton, Illinois*, 425 F. Supp. 3d 1035, 1042 (S.D. Ill. 2019). The factual allegations contained within a complaint must "raise a right to relief above the

3

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554-55, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted); see also *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). The court may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Aku v. Chicago Bd. of Educ.*, 290 F. Supp. 3d 852, 859 (N.D. Ill. 2017) (quoting *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)).

To establish Article III standing, a Plaintiff must allege injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 504 U.S. 561, 112 S.Ct. 2130 (internal quotation marks and alteration omitted). "The standing test can be easily met in most types of class suits so long as the class representative has incurred actual injury." *Halperin v. Intl. Web Services, LLC,* 70 F.Supp.3d 893, 898 (N.D. Ill. Sept. 30, 2014) (citing William B. Rubenstein, Newberg on Class Actions § 2:4, p. 65 (5th ed. 2011)). In *Halperin*, the court found that Plaintiff had standing to sue in a class action after his computer was "infected" with a program called Text Enhance, which caused him to not be able to use his computer "for its original intended purposes." *Id.* The court reasoned, "the allegations regarding Text Enhance may or may not be true, but Halperin has alleged enough of an injury to support standing." *Id.* see also *Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir.1994) ("even a minor

or non-economic injury will satisfy the strictures of Article III, though purely psychological harm will not"); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 289, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) (noting that even an injury worth "only a dollar or two" would be sufficient to support Article III standing); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (holding that the plaintiff had properly alleged Article III standing where he complained of "constraints placed on the use of his parcels"); *Johnson v. Allsteel, Inc*., 259 F.3d 885, 887–88 (7th Cir.2001) (holding that an allegation that the defendant "increased its discretion as [ERISA] plan administrator" was sufficient to confer Article III standing because it "decreased the value of [plaintiff's] bargained-for-entitlements"). Here, plaintiffs have purchased a defective product containing the cancer-causing chemical benzene; this defect has reduced its intended use and value. The diminished value is financial harm that is sufficient for standing. Additionally, the financial injury directly results from the Defendant's actions in manufacturing as well as distributing the product. These allegations are sufficient for causation at the pleading stage. A court ruling could redress this harm through damages and injunctive relief. See also *In re Aqua Dots Prods. Liab. Litig*., 654 F. 3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing").

Furthermore, Defendant cites to *Nelson v. John Paul Sys.* to argue that Plaintiffs do not have standing. See ECF No. 14, p. 5; *Nelson v. John Paul Sys*, 2024 WL 4265198 *8-10 (N.D. Ill. Sept. 23, 2024). However, the facts in *Nelson* are not analogous to the case at present. The court in *Nelson* reasoned that Plaintiffs did not have standing because, "plaintiffs do not allege that the Product that they purchased contained benzene. Instead, Plaintiffs argue that because Valisure's test of three lots of the Product revealed the presence of benzene, there is a risk that *all* the lots of

5

the Product contained benzene, and therefore the Product that they purchased did contain or likely contained benzene." *Nelson,* 2024 WL 4265198 at *3. Here, Plaintiffs allege that the generic version of Mucinex sold by Walgreens, CVS, Walmart, and Target did contain benzene, a cancer-causing chemical. *Am. Compl.* ¶ 2, ¶ ¶ 9-11. Additionally, Plaintiffs allege they bought the generic version of Mucinex from Walgreens. *Am. Compl.* ¶¶12-13. Plaintiffs do not allege that there are specific lots of the generic Mucinex that contain benzene, rather that *all* generic Mucinex products contain benzene because of the carbomer used to make the generic version. *Am. Compl.* ¶¶9, 11 (emphasis added). Moreover, the same deficiencies can be found in the other cases that Defendant cites. For instance, *Abbott* actually supports Plaintiff's position. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 2023 WL 3585759, at *5 (N.D. Ill. May 22, 2023). "Because Willoughby has plausibly alleged that at least most of Abbott's products contained heavy metals, it follows that she has plausibly alleged that the products she purchased contained heavy metals." *Id.* (finding that Plaintiff Willoughby has standing due to alleging a uniform defect); See also *Huertas v. Bayer US LLC*, 120 F.4th 1169 (3rd. Cir. 2024) (finding that consumers plausibly alleged that the particular products they purchased were contaminated with benzene and could support consumers' assertion of economic injury and thus satisfy injury-in-fact requirement for Article III standing); See also distinguishing facts in *In Re Johnson and Johnson Talcum Powder Prods., Marketing, Sales Practices, and Liab. Litig.*, 903 F.3d 278, 287 (3rd. Cir. 2018) ("In order to allege that she has suffered an economic injury as a result of simply purchasing Baby Powder, Estrada must allege that she purchased Baby Powder that was worth less than what she paid for"). Therefore, Plaintiffs have standing in this case due to plausibly alleging financial harm and a uniform defect in Defendant's product.

    **2. Plaintiffs have Stated a Claim for Relief**

A complaint will survive a 12(b)(6) motion if, after the court disregards any portions that are "no more than conclusions," it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937. "'Plausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible*, 799 F.3d at 639 (quoting *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015)). After *Twombly* and *Iqbal*, a plaintiff seeking to survive a motion to dismiss must "plead some facts that suggest a right to relief that is beyond the speculative level." *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (internal quotation marks omitted).

Defendant asserts, "Plaintiffs plead no facts to support the necessary contention that they purchased Products containing benzene." ECF No. 14, p. 8. However, this is not the case. In Plaintiffs' Amended Complaint, Plaintiffs allege that they bought the generic version of Mucinex from Walgreens. Additionally, "in the case of generic Mucinex, the major US chains all source their extended release mucus-relief medicine from the same New Jersey company, Amneal Pharmaceuticals. Unfortunately, the Products contain Benzene which is a colorless, flammable liquid that…has been linked to diseases such as leukemia and lymphoma. The carbomer used to make the generic versions of the large retail pharmacies in the U.S. does indeed contain benzene." *Am. Compl.* ¶¶9-13. These claims are supported by reputable news sources. *Id.* Since Plaintiffs plead that Defendant's product contains benzene with factual and evidentiary support, this means it is reasonable to conclude the specific products purchased by Plaintiffs also contain benzene.

7

Plaintiffs allege benzene is uniformly included in all of Defendant's generic Mucinex products. As such, Plaintiffs state a facially plausible claim for relief beyond just a speculative level.

### 3. 21 U.S.C. § 379r does not expressly preempt Plaintiffs' claims

Federal preemption stems from the Supremacy Clause, which states that the Constitution and laws of the United States are the "supreme Law of the Land." *See* U.S. Const. art. VI, cl. 2. The Supremacy Clause "invalidates state laws that interfere with or are contrary to federal law." *Nelson v. Great Lakes Educ. Loan Servs.*, Inc., 928 F.3d 639, 646 (7th Cir. 2019). Express preemption occurs when a federal statute says "explicitly what states may and may not do." *Nationwide Freight Sys., Inc. v. Illinois Com. Comm'n,* 784 F.3d 367, 373 (7th Cir. 2015). The Food, Drug, and Cosmetic Act ("FDCA") is the federal statute that regulates the marketing and labeling of drugs. *Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 789 (N.D. Ill. 2023). The FDCA prohibits states from "establish[ing] ... any requirement ... that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter." *See* 21 U.S.C. § 379r(a)(2). The FDCA expressly preempts "state-law theories that impose requirements 'not identical' to its own requirements." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019).

Furthermore, the facts here are analogous to the *Barnes* case as the Plaintiffs there brought an action under multiple state consumer protection statutes against Defendant because their product contained benzene. *Barnes v. Unilever US Inc*., 2023 WL 2456385 at *10. The court in *Barnes* stated, "Barnes's deceptive practices claims based on alleged affirmative misrepresentations, however, are not preempted. The statements on Unilever's website concern product safety and testing, *see* Am. Compl. ¶ 94, which do not implicate Unilever's preemption arguments applying the FDA's labeling requirements." The court in *Barnes* made a key distinction between claims based on affirmative misrepresentations and those based solely on omissions requiring additional

8

disclosures. The court in *Barnes* held that claims based on affirmative misrepresentations about product safety and testing were not preempted because they did not conflict with FDA labeling requirements. Here, Plaintiffs have alleged in their amended complaint that, "through marketing and sale, Defendant represented that the Products are safe for people, including pregnant women and their newborns, adults aged 65 or older, and people with weakened immune systems." *Am. Compl.* ¶ 12. For instance, the Product itself as well as on the Product's website states the product's general uses, the ingredient list, and directions for use. This, among other things, is marketing and sale that leads consumers to believe that the Product is safe for use. Defendant has falsely misled the public by claiming that the Product is safe, which would not be preempted as articulated under *Barnes* because it is an affirmative misrepresentation about product safety.

In addition, the facts here are also analogous to *Bojko v. Pierre Fabre USA Inc.*, 2023 WL 4204663 at *5 (N.D. Ill. June 27, 2023). In *Bojko*, Plaintiffs brought various claims against Defendant including relating to the omission of the presence of Benzene in their dry shampoo and an associated warning. The court held, "Defendant does not explain how Plaintiffs' claim that the Products' labels fail to warn consumers about the presence of benzene is different from or in addition to the requirement in 21 C.F.R. § 740.1(a). See *Henning*, 2023 WL 3555998, at *6 (holding that claim based on a lack of warning about the presence of benzene in dry shampoo products was not expressly preempted in light of 21 C.F.R. § 740.1). Therefore, claims based on the lack of warning on the Products' labels about the presence of benzene are not expressly preempted." *Id.* Thus, Plaintiffs' claims are not expressly preempted under the FDCA.

### 4. 21 U.S.C. § 379r does not impliedly preempt Plaintiffs' claims

Conflict preemption arises when state law conflicts with federal law to the extent that "compliance with both federal and state regulations is a physical impossibility," or the state law

9

"stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Giannopoulos v. Iberia Lìneas Aèreas de España, S.A.,* 17 F.Supp.3d 743, 750-751 (N.D. Ill. Feb. 12, 2014). In *Wyeth*, the Supreme Court held, "in keeping with Congress' decision not to pre-empt common-law tort suits, it appears that the FDA traditionally regarded state law as a complementary form of drug regulation. The FDA has limited resources to monitor the 11,000 drugs on the market and manufacturers have superior access to information about their drugs, especially in the post-marketing phase as new risks emerge. State tort suits uncover unknown drug hazards and provide incentives for drug manufacturers to disclose safety risks promptly." *Wyeth v. Levine*, 555 U.S. 555, 578-579, 129 S.Ct. 1187173 L.Ed.2d 51 (2009). Furthermore, "Wyeth has not persuaded us that failure-to-warn claims like Levine's obstruct the federal regulation of drug labeling." *Id.* at 581.

Here, Defendants can comply with both FDCA regulations, while also including additional warnings in accordance with state consumer protection laws as there is no direct contradiction. *Wyeth* makes clear that state laws *supplement*, rather than obstruct federal regulation while noting that federal agencies lack the resources to monitor all risks. Compliance with both state and federal law is possible. Therefore, Plaintiffs' claims are not impliedly preempted.

5. **The Economic Loss Rule Does Not Bar Plaintiffs' Negligence and Strict Liability Claims**

The Supreme Court of Illinois described economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property.*" (emphasis added) *Moorman v Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69 at 82, 61 Ill.Dec. 746, 435 N.E.2d 443 (Ill. 1982). The court in *Moorman* articulated three exceptions to the economic loss rule: (1) where the plaintiff sustained

10

damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence (*Moorman*, 91 Ill.2d at 86, 61 Ill.Dec. 746, 435 N.E.2d 443); (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud (*Moorman*, 91 Ill.2d at 88–89, 61 Ill.Dec. 746, 435 N.E.2d 443); and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions (*Moorman*, 91 Ill.2d at 89, 61 Ill.Dec. 746, 435 N.E.2d 443). See also *In re Illinois Bell Switching Station Litigation*, 161 Ill.2d at 240–41, 204 Ill.Dec. 216, 641 N.E.2d 440.

Here, Plaintiffs' injuries fall within all the exceptions to the economic loss rule. First, Plaintiffs have been injured due to exposure to Benzene, cancer-causing ingredient in the Defendant's Product. This claim involves personal injury rather than purely economic loss, making it fall outside the scope of the economic loss rule and within the first exception. Second, Defendant failed to warn Plaintiffs about Benzene and its potential to cause cancer. This failure to warn was an intentional false representation. Third, Defendant is in the business of supplying information for business transactions and thus, Plaintiffs' damages are proximately caused by the negligent misrepresentation that their Product is safe and free from cancer exposure. Therefore, since Plaintiffs' claims fall within the exceptions to the economic loss rule, Plaintiffs' negligence and strict liability claims should not be denied.

### 6. Plaintiffs Plausibly Plead Walgreens Knowledge or Intent Needed for their Fraudulent Concealment and ICFA claims

To state a claim under the ICFA, a complaint must allege: (1) a deceptive act or practice, (2) an intent for the consumer to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage that was (5) proximately

caused by the deception. See *Phila. Indem. Ins. Co. v. Chicago Title Ins. Co*., 771 F.3d 391, 402 (7th Cir. 2014); *Davis v. G.N. Mortg. Corp*., 396 F.3d 869, 883 (7th Cir. 2005); see also *Sneed v. Ferrero U.S.A.*, Inc., 656 F.Supp.3d 777, 782-84 (N.D. Ill. 2023). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Benson v. Fannie May Confections Brands*, Inc., 944 F.3d 639, 646 (7th Cir. 2019).

Furthermore, "the general rule that fraud cannot be pled based on information and belief is not ironclad, however: the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Uni*Quality, Inc. v. Infotronx*, Inc., 974 F.2d 918, 924 (7th Cir. 1992). For example, the Seventh Circuit has noted some flexibility in Rule 9(b)'s application when information lies outside of a plaintiff's control. See *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

Here, Defendant failed to warn Plaintiffs about the Product's exposure to Benzene, which is a carcinogen. A failure to disclose this material fact constitutes a deceptive act. Consumers such as Plaintiffs would not have purchased the Product had they known about the Benzene contamination. Defendants intended for unsuspecting consumers to rely on the lack of warning and continue purchasing the product under the assumption that it was safe.

Moreover, information about Benzene's presence and its potential harm is within the exclusive knowledge and control of the Defendant, such as internal research, testing data, or regulatory disclosures. Plaintiffs lack access to this information, and it is outside of their control. Therefore, Plaintiffs have incurred damages under the ICFA and fraudulent concealment.

**7. Plaintiffs Plead an Express Warranty**

To state a claim for breach of an express warranty under Illinois law, the complaint must allege "(1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar General Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

Here, Defendant contends that Plaintiffs did not identify an express "description of goods" from the Products' packaging or advertising that made the representation that the Product was safe to consume. The Product's packaging and advertising includes its uses, directions for use, and an ingredient list, which implies that it is safe for consumption as directed. Consumers reasonably expect that a product meant for ingestion is free from harmful contaminants unless explicitly warned otherwise. Defendant's Product's intended use and representations creates an expectation of safety. If a product's labeling fails to disclose risks that would materially affect consumer decisions, this amounts to a breach of an express warranty. Furthermore, Defendant's packaging and advertising describe the product's intended purpose which carries an implied promise that the product is suitable for that use without undisclosed health risks. Plaintiffs' claim is valid because the Product's labeling and advertising create an expectation of safe consumption, which Defendant failed to uphold.

### 8. Plaintiffs' Implied Warranty Claims Do Not Fail

"In contracts for the sale of goods, a warranty that the goods shall be merchantable is implied ... if the seller is a merchant with respect to goods of that kind. To be merchantable, the goods must pass without objection in the trade under the contract description and must be fit for the ordinary

13

purposes for which such goods are used." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F.Supp.3d 718, 725 (N.D. Ill. Feb. 22, 2021) (internal citation omitted).

Here, Plaintiffs bought a product to fight mucus and congestion and instead received a product that is contaminated with Benzene. Benzene is a known cancer-causing contaminant. Plaintiffs bargained for a product that is safe to consume and that will help fight sickness, not cause it. Thus, Defendant's Product is not fit for its ordinary purpose, and they breached the implied warranty of merchantability.

### 9. Plaintiffs' Warranty Claims Provide Pre-Suit Notice and Demand

"Whether sufficient notice has been provided is generally a question of fact to be determined based upon the particular circumstances of each case." *In re Rust-Oleum Restore Mktg., Sales Practices and Products. Liab. Litig.*, 155 F.Supp.3d 772, 799 (N.D. Ill. Jan. 7, 2016) (quoting *Maldonado v. Creative Woodworking Concepts*, Inc., 296 Ill.App.3d 935, 230 Ill.Dec. 743, 694 N.E.2d 1021, 1026 (1998)). "In particular, a notification of breach of warranty is sufficient if it lets the seller know that the particular 'transaction is still troublesome and must be watched.'" *Id.* (internal citation omitted). In general, buyers "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty. There are instances, however, when a buyer can fulfill the notice requirements without giving direct notice to the seller." *Id.* "One of these exceptions to direct notice includes when the seller had actual knowledge of the defect of the particular product." *Id.* at 800.

Here, as stated in Plaintiffs' Amended Complaint, Defendant was provided sufficient and constructive notice of its breaches of implied warranties associated with the Products through Defendant's review of consumer complaints and other reports. These consumer complaints and other reports means Defendant had actual knowledge of the Product's defect. At minimum, these

14

complaints let Defendant know that these transactions are troublesome, thereby satisfying the notice requirement.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

DATED: February 18, 2025

Respectfully submitted,

/s/ *Paul Doolittle*
Paul Doolittle, Esq. (*Pro Hac Vice*)
Roy T. Willey, IV
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
roy@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff*